**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

| | |
|---|---|
| JOEL ALLEN RUTIGLIANO, | ) Case No. EDCV 17-01072-AS |
| | ) |
| Plaintiff, | ) **MEMORANDUM OPINION AND** |
| | ) |
| | ) **ORDER OF REMAND** |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PROCEEDINGS**

On May 30, 2017, Plaintiff filed a Complaint seeking review of the denial of his application for Supplemental Security Income. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 11-12). On October 17, 2017, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 16-17). The parties filed a Joint Submission ("Joint Stip.") on February 20, 2018, setting

1

forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 20).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On August 3, 2010, Plaintiff, formerly employed as a tester for a manufacturing company and a deliverer for a phone book company (see AR 57-58, 172, 179-81), filed an application for Supplemental Security Income, alleging a disability since October 31, 2005. (AR 148-54).

On October 26, 2011 and May 7, 2012, the Administrative Law Judge, Lawrence I. Duran ("ALJ Duran"), heard testimony from Plaintiff (who was not represented by counsel), Plaintiff's mother, and vocational experts Roxanne Minkus and Corinne Porter. (See AR 31-44, 47-83). On May 17, 2012, ALJ Duran issued a decision denying Plaintiff's application. (See AR 13-24). After determining that Plaintiff had severe impairments -- "left ilionguinal nerve block; status post inguinal hernia repair; nystagmus; visual acuity 20/200 in left eye; astigmatism; emmetropia; asthma; left groin pain; depressive disorder; and anxiety" (AR 15-16)[1]

---

[1]    ALJ Duran found that Plaintiff's other impairments -- benign right choroidal nevus, seizures, and hypertension -- were nonsevere. (AR 15-16).

-- but did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (AR 16-18), ALJ Duran found that Plaintiff had the residual functional capacity ("RFC")[2] to perform heavy work[3] with the following limitations:

> can lift and/or carry 50 pounds frequently and 100 pounds occasionally; can stand and/or walk for 6 hours out of an 8-hour workday with regular breaks; can sit for 6 hours out of an 8-hour workday with regular breaks; unlimited pushing and/or pulling; can climb, balance, stoop, kneel, crouch, crawl, reach, handle and finger frequently; must avoid concentrated exposure to extreme heat, cold, dust, odors, fumes and pulmonary irritants; can perform simple work; can interact with co-workers, supervisors and the general public occasionally; cannot perform work that requires good visual acuity; and needs letter to be 1 inch in size, close up.

(AR 18-23).

ALJ Duran then determined that Plaintiff was not able to perform any past relevant work (AR 23), but that jobs existed in significant

---

[2]   A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. § 416.945(a)(1).

[3]   "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 416.967(d).

3

numbers in the national economy that Plaintiff can perform, and therefore found that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 23-24).

The Appeals Council denied Plaintiff's request for review of ALJ Duran's decision on August 22, 2013.  (See AR 1-3, 5).

Plaintiff filed an action in this Court seeking review of ALJ Duran's decision.  On May 29, 2015, the Court issued an Order and Judgment remanding the matter to the Commissioner based on ALJ Duran's failure to fully develop the record with respect to medical records from treating sources.  (See AR 416-25; see also AR 431-35 [July 23, 2015 Appeals Council Order vacating ALJ Duran's decision and remanding case to administrative law judge]).

On July 25, 2016 and December 5, 2016 (on remand), another Administrative Law Judge ("the ALJ"), Mason Harrell, Jr., heard testimony from Plaintiff (who was represented by counsel), medical experts Wayne Kidder and Dr. Glassmeyer, and vocational experts Gregory Jones and Troy Scott. (See AR 333-57, 360-96).  On February 6, 2017, the ALJ issued a decision denying Plaintiff's application. (See AR 312-23). After determining that Plaintiff had severe impairments -- "seizure disorder; history of left inguinal hernia repari; congenital nystagmus; history of pulmonary embolism; valvular heart disease; mild degenerative disc disease of the lumbar spine with lower back pain; alcohol abuse;

major depressive disorder; posttraumaic stress disorder (PTSD); and borderline intellectual functioning" (AR 314) -- but did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (AR 314-16), the ALJ found that Plaintiff had the RFC to perform medium work[4] with the following limitations:

> can lift, push or pull 25 pounds frequently and 50 pounds occasionally; can sit, stand or walk for 6 hours out of an 8-hour workday; can climb ramps and stairs frequently; cannot climb ropes, scaffolds or ladders; can balance occasionally; can stoop, kneel, crouch or crawl frequently; cannot read fine print (smaller than 1/8 of an inch); cannot perform jobs where distant vision is critical; must avoid exposure to fumes or gases; can be exposed to "no more air pollutants than found in an air-conditioned environment"; must avoid dangerous machinery or working at heights; limited to non-complex and routine tasks; cannot have interactions with the public; can perform tasks requiring teamwork only occasionally; and might miss work once per month.

(AR 316-321).

---

[4]   "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

The ALJ then determined that Plaintiff did not have any past relevant work (AR 321), but that jobs existed in significant numbers in the national economy that Plaintiff can perform, and therefore found that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 321-23).

The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision.[5] See 42 U.S.C. §§ 405(g), 1383(c); 20 U.S.C. § 416.1484(d).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence.  See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).  To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion."  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted).  As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

---

[5]    The record does not reflect Plaintiff's request for review of the ALJ's decision by the Appeals Council.

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in failing to properly: (1) consider the relevant medical evidence in assessing Plaintiff's RFC; (2) consider Plaintiff's subjective symptom testimony in assessing Plaintiff's RFC; and (3) determine whether there are two jobs in the national economy that Plaintiff can perform. (See Joint Stip. at 6-12, 18-21, 26-28).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's second claim of error warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's second claim of error, the Court will not address Plaintiff's first and third claims of error.

**A.    The ALJ Did Not Properly Assess Plaintiff's Subjective Symptom Testimony In Determining Plaintiff's Residual Functional Capacity**

Plaintiff asserts that the ALJ did not provide legally sufficient reasons for finding that Plaintiff's statements and testimony about his symptoms and limitations was not credible. (See Joint Stip. at 18-21). Defendant asserts that the ALJ provided valid reasons for finding Plaintiff not credible. (See Joint Stip. at 21-26).

//

//

//

7

1.    <u>Legal Standard</u>

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . ." Soc. Sec. Ruling ("SSR") 16-3p, 2016 WL 1119029, *2 (Mar. 16, 2016).[6]

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir. 1996); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991).  Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her pain and symptoms only by articulating specific, clear and convincing reasons for doing so.   <u>Brown-Hunter v. Colvin</u>, 798 F.3d 749, 755 (9th Cir. 2015)(citing <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007)); <u>see</u> <u>also</u> <u>Smolen</u>, <u>supra</u>; <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998); <u>Light v. Social Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997).  Because the ALJ does not cite to any evidence in the record

---

[6]    SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR 16-3p, which became effective on March 28, 2016, was in effect at the time of the ALJ's February 6, 2017 decision.  20 C.F.R. § 416.929, the regulation on evaluating a claimant's symptoms, including pain, has not changed.

of malingering, the "clear and convincing" standard stated above applies.

Generalized, conclusory findings do not suffice. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004)(the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001)(the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

2.    The ALJ's Credibility Finding

Plaintiff gave the following testimony at the July 25, 2016 administrative hearing (see AR 334-55):

He is 40 years old, is not married, and does not have children. He went to school until the ninth grade, and he knows how to read, write, and do simple math. He receives public assistance (CalFresh) to buy food, and is staying at the residence of a good friend. He last used methamphetamines in December 2015, and he drinks alcohol but is trying to quit. He believes he last worked in 2005. He could no longer work, because of a duodenal hernia surgery (although the right side is fine, he still has severe pain in his left side), and because he experiences anxiety being around people following a house fire in 2008. (See AR 334-39, 349).

He has pain in his left groin when he tries to walk any kind of distance or when he lifts anything heavy. The pain in his left groin has been the same over the last few years.

9

He last experienced such pain when he went shopping seven days earlier (and he still feels pain). The fire caused damage to his lungs (including a lung embolism); he had to have a thoracentesis (the removal of fluid). Although his breathing has been stable for a couple of years, his lung issue causes shortness of breath when he is sitting down and walking. He has had a lifelong problem with both eyeballs ("certain kind of fog that rolls into [his] eyes"). His eyeball problem is getting worse; it is happening more frequently (once or twice a month) and last about 25 minutes. He also has nystagmus (his eyes shift back and forth), even though he had surgery when he was a baby. He gets dizzy when he reads small print. To read he usually uses a magnifying glass or holds papers close to his face. He has panic attacks (which cause his lips to go numb), lasting from 25 minutes to 3 hours, at least once a week. When he has a panic attack outside his house, he tries to get home as fast as possible. He has a sharp, burning pain ("like a sharp spoon maybe twisting in [my] spine") caused by a herniated disc (L3). His back pain, which does not travel up or down, affects his ability to sit and to lift. He threw out his back putting on his shoes (bending). He has a tingling sensation in his right leg. He walks with a limp (he does not use an assistive device). (See AR 341-55).

He has had two nerve blocks in his groin -- the first one in August 2010 gave him relief; the second one did not give him relief. When his groin hurts, he has to lie down and/or take his medication (Dilantin) (which usually works) and he sometimes applies heat. He is taking medication for his anxiety. In the past he has gone to a psychologist for his anxiety, but has not yet gone to a clinic to which he was referred (to obtain his medication). He has gone two or three times to a spine clinic for his herniatic disc; physical therapy and injections have been recommended, and then surgery, if necessary. (See AR 337, 345, 353-54).

On a typical day he listens to books on the internet. He tries to do dishes, does his own laundry, buys he own food (the last time was a week earlier). It is difficult for him to buy his own food because it means going out in public: "I feel like people are looking at me, staring at me. It's just like walking on a tightrope." (His fear of going out in public started after the house fire.) (See AR 340-41).

He is not able to work a job packing shoes in boxes because of his groin pain (he would have to call somebody for a ride home) and his panic attacks (he would have to lock himself in a bathroom or try to make it home). He does not know whether he could get through one day. (See AR 351-52).

After briefly summarizing Plaintiff's testimony (see AR 317), the ALJ made the following findings: Plaintiff's "medically determinable

impairments could reasonably be expected to produce the above alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can be reasonabley be accepted as consistent with the objective medical and other evidence and other evidence." (Id.).

The ALJ discussed the objective evidence concerning Plaintiff's groin pain, back pain, respiratory issues, cardiovascular issues, vision issues, neurological issues, and mental issues, and found that (with the exceptions of Plaintiff's vision issues and inability to be in public) and found that the objective evidence did not support or corroborate Plaintiff's testimony of disabling symptoms. (AR 318-19). In particular, the ALJ found that "other evidence in the record refutes the severity of the claimant's subjective complaints," stating:

> As pertinent here, the [Plaintiff's] descriptions of his activities of daily living are not limited to the extent expected given his complaints of disabling symptoms and limitations. According to the claimant, he can manage his personal hygiene, perform household chores that include washing dishes, laundry, and cooking, and shop in stores (Hearing Testimony; Exhibit 3F, p. 4; Exhibit 25F, p. 3). Although he testified that being in public is difficult for him, the record notes that he is able to use public transport (Exhibit 38F, p. 26). He can also read, write, perform simple mathematical calculations, and follow audiobooks (Hearing Testimony). Accordingly, these examples are other factors considered in evaluating the intensity, persistence, and limiting effects of the [Plaintiff's] alleged symptoms, and they illustrate the claimant's greater ability to function in contravention to his claims. (AR 319-20).

11

3.   The ALJ's Assessment of Subjective Symptom Testimony

As set forth below, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's testimony about the intensity, persistence and limiting effects of his pain and symptoms.[7]

First, the ALJ's discounting of Plaintiff's testimony about his symptoms and functional limitations based on his ability to perform certain daily activities, such as managing his personal hygiene, washing dishes, doing laundry, cooking, and shopping, was not a clear and convincing reason.  See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick, supra ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").  While a plaintiff's ability to spend a "*substantial part*" of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting may be sufficient to discredit him, here, there is no evidence that Plaintiff was spending a substantial part of his day engaged in these activities or that the physical demands of such tasks as managing his personal

---

[7]   The Court will not consider reasons for discounting Plaintiff's subjective symptom testimony (see Joint Stip. at 22, 25-26) that were not given by the ALJ in the decision.  See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.  2003)("We are constrained to review the reasons the ALJ asserts."; citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947), Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)); and Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014)("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

hygiene, washing dishes, doing laundry, cooking, and shopping were transferable to a work setting.  See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).  There is no indication in the record, and the ALJ did not ask Plaintiff at the administrative hearing, about the amount of time it took Plaintiff to perform each of these activities.  Although Defendant contends that the ALJ's decision was supported by Plaintiff's testimony at the October 26, 2011 administrative hearing (see Joint Stip. at 25, citing AR 71-72), it does not appear that the ALJ considered or relied on that testimony in his decision.  Thus, Plaintiff's admitted daily activities do not constitute a legally sufficient reason to reject Plaintiff's subjective symptom testimony.

It is not clear whether the ALJ considered Plaintiff's testimony about his limited abilities to perform such daily activities (see AR 340 [Plaintiff testified that he tries to wash dishes "when [he] can], 340-41 [Plaintiff testified that he last went shopping for food a week earlier], 59-60 [Plaintiff testified at the October 26, 2011 administrative hearing that he sometimes cooks meals but that at that time he was not able to cook his own meals].  Therefore, the degree to which Plaintiff could perform such daily activities may not have been inconsistent with his testimony regarding his symptoms and limitations. See Reddick, supra; see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.").

Second, although the ALJ also found that there was a lack of objective medical evidence supporting Plaintiff's testimony concerning his symptoms and limitations, this factor cannot, by itself, support an adverse finding about Plaintiff's testimony. See Trevizo v. Berryhill, 862 F.3d 987, 1001 (9th Cir. 2017)(once a claimant demonstrates medical evidence of an underlying impairment, "an ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence.'"; quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); see also SSR 16-3p, 2016 WL 1119029, *4-*5 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record. . . . However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment related-symptoms alleged by the individual.").

Because the Court finds that the the ALJ did not discount Plaintiff's subjective symptom testimony on legally permissible grounds, the Court is unable to defer to the ALJ's credibility determination. Cf. Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995)(the court will defer to the ALJ's credibility determinations when they are appropriately supported in the record by specific findings justifying that decision)(citations omitted).

**B.    Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, supra, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's subjective symptom testimony, remand is appropriate.  Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[8]

_____

[8]    The Court has not reached any other issue raised by Plaintiff except to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014).  Accordingly, the Court declines to rule on Plaintiff's claims regarding the ALJ's errors in failing to properly (1) consider the relevant medical evidence in assessing Plaintiff's RFC (see Joint
(continued...)

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 28, 2018

_____
/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

[8] (...continued) Stip. at 6-12), and (2) determine whether there are two jobs in the national economy that Plaintiff can perform (see Joint Stip. at 26-28). Because this matter is being remanded for further consideration, these issues should also be considered on remand.